# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON,

Respondent/Cross-Appellant,

v.

COLE EDWARD KRAUSE,

Appellant/Cross-Respondent.

In the Matter of the Postsentence Review of

COLE EDWARD KRAUSE.

No. 84599-3-I
(consolidated with
No. 84896-8-I)

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — A jury found Cole Krause guilty on counts 1, 2, and 4 of rape in the third degree as committed against A.C.S.,[1] A.L., and A.C. The jury also found Krause guilty on count 3 of rape in the second degree of A.C. On remand from the Supreme Court affirming the trial court's decision not to sever, Krause maintains his challenges to joinder of his charges, to the admission of some of A.L. and A.C.'s testimony, to the language of jury instruction 6, and to the lack of a unanimity instruction for count 3. In addition, we consider a postsentence petition from the Department of Corrections (DOC), arguing the sentencing court erred when it

---

[1] The February 28, 2022 amended information identified A.C.S. as A.C., but we will identify her as A.C.S. throughout to distinguish from A.C. State v. Krause, No. 84599-3-I, slip op. at 2 (Wash. Ct. App. Dec. 30, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/845993.pdf.

sentenced Krause to a determinate sentence for rape in the second degree. Concluding the court erred in imposing a determinate sentence for rape in the second degree, we remand for resentencing on count 3. Otherwise, we affirm.

I

The facts are described in the previously issued opinions by the Supreme Court and by this court.

A

The State charged Krause by amended information with three counts of rape in the third degree—counts 1, 2, and 4—for having sexual intercourse with A.C.S., A.L., and A.C. The State also charged Krause by amended information with one count of rape in the second degree for having sexual intercourse with A.C.—count 3. Krause argued throughout trial that the charges should be severed.

At trial, A.L. testified that during the summer of 2016, she did not feel good about hanging out with Krause because she was in a vulnerable state. She also testified that when she and Krause had sex, she would be persistent in making sure he was wearing a condom. She noted one instance where she thought he was wearing one and learned during sex he was not actually wearing one. She also testified sex with Krause did not feel good.

A.C. testified that during her relationship with Krause, there would be times where both or one of them would be drunk and that he would try to initiate sex with her when she did not want sex. She testified he would try to coerce her and they would have sex, or she would say no, he would go away, she would fall asleep, and it would end up happening. She testified even when she did not want to have

2

sex with Krause, she would because she felt bad.  She also testified she had sex with Krause on Halloween and three weeks later learned she had become pregnant.

During A.C.'s testimony, Krause made objections based on hearsay, based on A.C. not answering a question with just yes or no, based on relevance, based on the form of a question the State asked, and based on pleas for sympathy, among others.  Krause also made an ER 404(b) objection to a question asking A.C. about an event that caused her to reevaluate past incidents with Krause, and a sidebar was held.  No determination of the objection was placed on the record, but the State asked instead if there was a point she went to a conference and learned some information that made her reevaluate her relationship with Krause.

At the close of all the evidence, the court instructed the jury:

[Jury Instruction 5]
A separate crime is charged in each count.  You must decide each count separately.  Your verdict on one count should not control your verdict on any other count.

[Jury Instruction 6]
The State alleges that the defendant committed acts of Rape in the Third Degree on multiple occasions.  To convict the defendant on any count of Rape in the Third Degree, one particular act of Rape in the Third Degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved.  You need not unanimously agree that the defendant committed all the acts of Rape in the Third Degree.

. . . .

[Jury Instruction 13]
A person commits the crime of Rape in the Second Degree when he or she engages in sexual intercourse with another person when the other person is incapable of consent by reason of being physically helpless or mentally incapacitated.

3

[Jury Instruction 14]

To convict the defendant of the crime of Rape in the Second Degree as charged in Count 3, each of the following three elements of the crime must be proved beyond a reasonable doubt:

(1) That on a specific date between on or about the 31st day of October, 2015 through on or about the 31st day of October 2016, the defendant engaged in sexual intercourse with [A.C.];

(2) That the sexual intercourse occurred when [A.C.] was incapable of consent by reason of being physically helpless or mentally incapacitated; and

(3) That this act occurred in the State of Washington.

If you find from the evidence that elements (1), (2) and (3), have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of elements (1), (2), or (3), then it will be your duty to return a verdict of not guilty.

During the State's closing argument, the State argued,

Let's talk about the Halloween party. [A.C.] remembers herself being 15 or 16, most likely 16 so that's the reason you have the span of dates. It is either Halloween 15 or 16. She's born in 2000. And she's at a party with some friends, and [Krause] is not there. And she is, according to herself, getting wasted. She's drinking a lot of beer. She's also drinking hard alcohol, which she doesn't do that often, and she gets blasted.

She ends up back at [Krause's] house. [Krause] tells you that she said can I come over? [A.C.] says that [someone] drove her over there. They were not together at this point. They were in the off-phase, but she went over to his house and he was angry with her. She had been at a party with a bunch of guys. She has been drinking. She is clearly intoxicated.

What did he tell you? On a scale of 1 to 10, she was a 6 or a 7. Now, I understand that there were further questions to try and walk back that a little bit, about what a 6 or 7 could mean. I would argue that any reasonable person—when you heard that she was a 6 or 7, you saw her stature. She is extremely intoxicated. And that is only going to continue as the night goes on—as anybody who drinks alcohol knows. It is not going to just stop.

They get into an argument. She doesn't remember about what, but she remembers she had vomit all over her; she changed into his clothes; she tried to lay down; he pulls her up to talk to her; but at some point she passes out.

And defense tries to ask her questions. Maybe it was just blacked out? Maybe it was you were awake and you don't remember

4

what happened?  And she was adamant.  "I passed out, and when I woke up [Krause] was having sex with me."  And then she passed out again.  And it's the being passed out after being that intoxicated that goes to the physically helpless.  She wasn't awake to say, yes, I want to do this or even, no, I don't.  She was neither.  She was passed out.

You have an instruction that tells you about mental incapacity and physically helpless.  It prevents the person from understanding the nature and the consequences of the act of sexual intercourse. And we will talk about consequences in a second.  She didn't even have an opportunity to say no because she passed out.

A jury found Krause guilty of all counts.

In his sentencing memorandum, Krause requested that he receive an exceptional sentence below the adult sentencing range for rape in the second degree of 210-280 months based upon his being a youthful offender.  At sentencing in October 2022, Krause presented expert testimony of forensic psychologist Dr. Elizabeth Bain.  She testified she did not interview Krause in preparing a sexual risk assessment of him, but noted his school records indicated significant impulsivity behavioral concerns that showed impulsivity above that of an average adolescent.  She testified she recommended a low-level offender treatment.

The court concluded it was left with a lack of mitigating evidence and it did not find a substantial and compelling reason to deviate from sentencing Krause within the standard range.  In its oral ruling, the court sentenced Krause to an indeterminate sentence of 210 months to life for count 3.  Krause objected, arguing that he was a juvenile at the time of the offense, so the sentence could not be indeterminate.  The court, based on case law and agreement in the briefing, stated

5

it believed count 3 required an indeterminate sentence and the court had discretion in this area.

In the written judgment and sentence, the court sentenced Krause to a determinate sentence of 210 months on count 3.

Krause appealed.

B

On appeal, Krause argued the trial court erred in not severing the charges, and we agreed, reversing and remanding. State v. Krause, No. 84599-3-I, slip op. at 3, 14 (Wash. Ct. App. Dec. 30, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/845993.pdf. We also concluded that (1) the trial court was not required to dismiss one of the counts because it had been charged in an earlier juvenile proceeding that was dismiss, (2) Krause waived any argument that the trial judge was required to recuse, and (3) there was sufficient evidence supporting the count of rape in the third degree of A.C. Krause, No. 84599-3-I, slip op. at 3. We did not reach his remaining assignments of error. Id.

The Supreme Court reversed our decision, concluding the trial court did not abuse its discretion when it did not sever Krause's charges. Krause, 6 Wn.3d 280, 283, 586 P.3d 593 (2026). The Supreme Court remanded to us for further proceedings consistent with its opinion. Id.

C

During Krause's appeal of the trial court's decision not to sever the charges, the DOC separately petitioned this court requesting remand to the sentencing court to sentence Krause to an indeterminate sentence. The DOC argued the

6

sentencing court erred because when a juvenile is subject to an indeterminate sentence, the court exceeds its discretion by ordering a determinate sentence.

Krause moved to consolidate his appeal with the postsentence petition. We denied his motion to consolidate and stayed consideration of the DOC's petition until the mandate issued in State v. Krause, No. 84599-3-I.

After the Supreme Court issued its opinion in Krause, Krause moved again to consolidate the DOC's petition with his appeal and requested leave to submit supplemental briefing to address: "(a) any remaining issues in this appeal; (b) any legal issues raised by [the] DOC in its Post Sentence Petition; and (c) the application of newly enacted RCW 13.40.300 in these proceedings." We lifted the stay in No. 84896-8-I, granted the motion to consolidate, and granted leave to the parties to file supplemental briefs addressing all remaining issues.

II

Krause argues we did not address his joinder challenge in our previous opinion and argues the Supreme Court's conclusion that his charges satisfied the same or similar character test of joinder is dicta.

Joinder and severance are related concepts. Krause, 6 Wn.3d at 289. "Offenses are eligible for joinder under CrR 4.3(a) if they are either (1) of the same or similar character or (2) based on the same conduct or part of a single scheme or plan." Krause, 6 Wn.3d at 289. "In addition, [t]he trial court must ensure the accused person is not undermined by presenting a multiplicity of unrelated and unconnected charges." Id. (alteration in original).

7

The Supreme Court ruled that Krause's charges were properly joined. Id. It noted Krause's charges, "as tried, turn on consent," "satisfied the 'same or similar character' standard under CrR 4.3(a)(1)," and "were related and connected." Krause, 6 Wn.3d 289. The court explained "all counts had the same character of offense and involved interconnected victims who would potentially have been called to testify multiple times if there were separate trials." Id. at 294. To the extent Krause's argument urges us to reach a different conclusion than the Supreme Court, we lack the prerogative to do so. State v. Johnson, 188 Wn.2d 742, 755, 399 P.3d 507 (2017) (law of the case doctrine " 'stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation.' ") (quoting Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005)).

Even if we were not constrained by the Supreme Court, however, the authorities on which Krause relies do not support error under CrR 4.3(a)(1). Krause cites State v. MacDonald, 122 Wn. App. 804, 814, 95 P.3d 1248 (2004), which said that "CrR 4.3(a) permits two or more offenses of similar character to be joined in one trial." However, MacDonald was a severance case, and it did not construe CrR 4.3(a) as requiring a different inquiry into the risk of prejudice to the defendant's rights than the four factors governing severance. MacDonald, 122 Wn. App. at 814-15. Here, the Supreme Court has determined that those factors did not show undue prejudice to Krause's rights. Krause, 6 Wn.3d at 294. Krause also cites State v. Ramirez, 46 Wn. App. 223, 224-25, 226, 730 P.2d 98 (1986), a case in which the defendant was charged with two counts of indecent liberties with

8

two different children at different times and places, and we explained, "where the prejudice mitigating factor that evidence of each crime would be admissible in a separate trial for the other is absent, we held it was an abuse of discretion to deny a defendant's timely motion to sever." But we did not foreclose the original joinder of the two counts, recognizing under our "liberal joinder rule" that "[b]ecause these offenses are of the same or similar character, CrR 4.3(a)(1) authorizes joinder." Id. at 226. Krause does not show error under CrR 4.3(a)(1).

III

Krause argues the trial court erred when it admitted evidence pertaining to A.L.'s, and A.C.'s sexual history with Krause without conducting an ER 404(b) analysis and that this was prohibited evidence of his "lustful disposition."

We may refuse to review any error that was not raised in the trial court. RAP 2.5(a). However, a party may raise for the first time in the appellate court, among other things, a claim of manifest error affecting a constitutional right. RAP 2.5(a)(3). "An evidentiary error, such as erroneous admission of ER 404(b) evidence, is not of constitutional magnitude." State v. Powell, 166 Wn.2d 73, 84, 206 P.3d 321 (2009). Krause acknowledges that he did not object to the challenged portions of A.L.'s testimony, but he argues he objected to the challenged testimony of A.C. ER 103(a)(1) states that an "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike is made, stating the specific ground of objection, if the specific ground was not apparent from the context." Krause's objections were to relevance and did not specifically

9

invoke ER 404(b), nor was it clear from the context his objections invoked a challenge to the testimony on ER 404(b) grounds. In addition, Krause's objection at the preliminary hearing on admissibility of ER 404(b) evidence to a "wide range of prohibited information" is not sufficiently definite enough to apprise the trial court of either what evidence he challenged or the basis for his objection. Concluding Krause waived the objections underlying this assignment of error, we decline to review it.

IV

Krause argues that the trial court violated his right to a unanimous jury based upon the court's instructions on counts 1, 2, and 4. We disagree.

Krause argues instruction 6 was inappropriate given the charging scheme and that the instruction resembles an instruction this court criticized in State v. Watkins, 136 Wn. App. 240, 148 P.3d 1112 (2006).

In Watkins, the instruction was

*"Although the twelve of you need not agree that all of the acts have been proved*, to convict the defendant of Count 1 or Count II *you must unanimously agree that at least one separate act* of Rape of a Child in the First Degree *pertaining to each count has been proved beyond a reasonable doubt."*

Id. at 246 (some emphasis added). We criticized this language because, under this instruction, we expressed concern that all the jurors could agree that one separate act was committed without necessarily agreeing that the same act was the basis for conviction. Id. But we did not reverse, because the Supreme Court had approved the instruction in State v. Noltie, 116 Wn.2d 831, 809 P.2d 190 (1991). Watkins, 136 Wn. App. at 246.

10

Here, the court instructed the jury:

[Jury Instruction 5]
A separate crime is charged in each count. *You must decide each count separately*. Your verdict on one count should not control your verdict on any other count.

[Jury Instruction 6]
The State alleges that the defendant committed acts of Rape in the Third Degree on multiple occasions. To convict the defendant on any count of Rape in the Third Degree, *one particular act of Rape in the Third Degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved*. You need not unanimously agree that the defendant committed al the acts of Rape in the Third Degree.

(Emphasis added.)

Krause argues that because the State alleged that he had nonconsensual intercourse with A.C.S. and A.L. each on only one occasion, there was not a unanimity issue requiring instruction 6 to be given. He then argues that instruction 6 implied to the jury that if they agreed one act happened, then they must agree that all of them happened. We disagree that the jury instructions as a whole in this case implied to the jury that they should not separately evaluate each count, where instruction 5 expressly directed them to do so. On the whole, the instructions here do not mislead the jury and correctly instruct the jury that in order to convict on each count of rape in the third degree, the jurors had to unanimously agree on which act supports which count beyond a reasonable doubt even if not all the jurors believed every act happened.

We are not persuaded that State v. Carson, 184 Wn.2d 207, 357 P.3d 1064 (2015) requires a different result. There, in the context of a claim of ineffective assistance of counsel, the court said it was a legitimate trial tactic in a multicount

case for defense counsel to object to the use of a Petrich[2] instruction designed for single-count cases. Id. at 215, 219. It does not follow that the court's use of such an instruction in a multicount case is necessarily improper, and here the balance of the instructions adequately instructed the jury not to let its verdict on any one count control its verdict on any other. We conclude the trial court's instruction did not violate Krause's right to a unanimous jury verdict on counts 1, 2, and 4.

V

Krause argues his right to a unanimous jury instruction was violated when the court did not provide a unanimity instruction as to count 3. We disagree.

A criminal defendant has a right to a unanimous verdict based on an act proved beyond a reasonable doubt. State v. Coleman, 159 Wn.2d 509, 511-12, 150 P.3d 1126 (2007). "When the prosecution presents evidence of multiple acts of like misconduct, any one of which could form the basis of a count charged, either the State must elect which of such acts is relied upon for a conviction or the court must instruct the jury to agree on a specific criminal act." Id. "To satisfy the constitutional demands of a fair trial, the jury instructions, when read as a whole, must correctly tell the jury of the applicable law, not be misleading, and permit the defendant to present his theory of the case." State v. O'Hara, 167 Wn.2d 91, 105, 217 P.3d 756 (2009).

"Where there is neither an election nor a unanimity instruction in a multiple acts case, omission of the unanimity instruction is presumed to result in prejudice."

---

[2] State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), abrogated in part on other grounds by State v. Kitchen, 110 Wn.2d 403, 405-06, 756 P.2d 105 (1988).

Coleman, 159 Wn.2d at 512. "The omission is error because of the possibility that some jurors relied on one act or incident and some relied on another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction." Id. "A conviction beset by this error will not be upheld unless the error is harmless beyond a reasonable doubt." Id. "The presumption of error is overcome only if no rational juror could have a reasonable doubt as to any of the incidents alleged." Id.

Krause argues the court erred in not providing a unanimity instruction on count 3 because the broad charging period necessitated such an instruction. A party objecting to the proposed jury instructions "shall state the reasons for the objection, specifying the number, paragraph, and particular part of the instruction to be given or refused." CrR 6.15(c). Although Krause did not propose a unanimity instruction for count 3 and did not object to the court's failure to provide one, we may reach his argument under RAP 2.5(a)(3) as a manifest error affecting a constitutional right. See State v. Lamar, 180 Wn.2d 576, 586, 327 P.3d 46 (2014) (reviewing defendant's unpreserved unanimous verdict claim under RAP 2.5(a)(3) because "jury instructions that fail to require a unanimous verdict constitute manifest error affecting a constitutional right."). Nonetheless, we disagree with Krause's argument.

Here, the State clearly elected to use the Halloween night incident as the basis for count 3. At trial, the State elicited testimony from A.C. describing the events on the night of Halloween. During closing arguments, the State presented argument that it was using the events of Halloween night as the basis for count 3. Although A.C. testified there were other instances of sex with Krause where she

would fall asleep and wake up to Krause having sex with her, it is clear from the State's elicited testimony and closing argument it elected to charge for the act of Halloween night. And, as to the charging period, the State was clear in its closing that it was referring to a single incident that A.C. described on Halloween night, even though there was doubt about the year in which the incident occurred. Because the State made a clear election, Krause does not show a unanimity error.

VI

Following Krause's sentencing, the DOC petitioned this court, arguing the sentencing court erred in sentencing Krause to a determinate sentence when count 3 required an indeterminate sentence. Both Krause and the State agree count 3 requires resentencing but dispute the remedy. Krause argues the error requires de novo sentencing and argues his previous assignment of error—that the court failed to meaningfully consider the mitigating factors of youth—is now moot. The State argues the court did meaningfully consider the mitigating factors of youth and the remedy should be to resentence as a ministerial correction. We agree Krause's previous assignment of error is now moot, and remand for resentencing on count 3.

A

Rape in the second degree is a class A felony. RCW 9A.44.050(2).

> Unless a different maximum sentence for a classified felony is specifically established by a statute of this state, no person convicted of a classified felony shall be punished by confinement or fine exceeding the following:
>     (a) For a class A felony, by confinement in a state correctional institution for a term of life imprisonment, or by a fine in an amount

14

fixed by the court of fifty thousand dollars, or by both such confinement and fine.

RCW 9A.20.021(1). RCW 9.94A.507 governs offenders who are not persistent offenders convicted of, among other offenses, rape in the second degree. RCW 9.94A.507(1)(a)(i). Under this statute, the court must sentence an offender to a minimum term and a maximum term, with the maximum term consisting of the statutory maximum sentence for the offense. RCW 9.94A.507(3)(a), (b). The Supreme Court has held that, in considering the mitigating factors of youth, judges do not have "the discretion to impose a determinate sentence where the legislature has mandated an indeterminate sentence." In re Pers. Restraint of Forcha-Williams, 200 Wn.2d 581, 591, 520 P.3d 939 (2022). "[T]he sentencing judge lacks the statutory authority to alter an indeterminate sentence or decide when the offender is released[, and] [t]his lack of express authority binds the sentencing judge's hands." Id. at 593 (citing State v. Barber, 170 Wn.2d 854, 872, 248 P.3d 494 (2011)). However, a sentencing judge may exercise discretion to impose a minimum term below the statutory minimum. See id. at 598 ("Accordingly, we hold where the legislature has chosen an indeterminate sentencing scheme, [State v.] Houston-Sconiers[, 188 Wn.2d 1, 391 P.3d 409 (2017)] gives judges the discretion to impose a minimum term below the statutory minimum to protect juveniles who lack adult culpability from disproportionate punishment.").

"Under chapter 9.95 RCW, the superior court sets the offender's maximum sentence and the ISRB [Indeterminate Sentence Review Board] determines the actual period of confinement." In re Pers. Restraint of Parejo, 5 Wn. App. 2d 558, 561, 428 P.3d 130 (2018). RCW 9.95.011(2)(a) provides that "not less than ninety

days prior to the expiration of the minimum term of a person sentenced under RCW 9.94A.507, . . . the [ISRB] shall review the person for conditional release to community custody as provided in RCW 9.95.420." "The ISRB 'shall not, . . . until his or her maximum term expires, release a prisoner, unless in its opinion' the inmate has been rehabilitated and is 'subject for release.' " Parejo, 5 Wn. App. 2d at 561-62 (quoting RCW 9.95.100).

The State urges us to remand for a ministerial correction of the sentence on count 3 to an indeterminate sentence. Presumably, this would mean changing the determinate sentence that the court imposed at the low end of the standard range of 210 months, to a new indeterminate sentence with a minimum term of 210 months and a maximum term of the statutory maximum, life. The State cites authority noting the distinction between a trial court exercising discretion on remand compared to making only corrective changes. See State v. Barberio, 121 Wn.2d 48, 51, 846 P.2d 519 (1993). But the State cites no authority that this court can, in effect, assume what indeterminate sentence the sentencing court would have imposed when it erroneously entered a determinate sentence instead. " '[W]here the act to be done involves the exercise of discretion or judgment, performance of that duty is not merely ministerial.' " State v. Davenport, 140 Wn. App. 925, 932-33, 167 P.3d 1221 (2007) (quoting City of Bothell v. Gutschmidt, 78 Wn. App. 654, 662-63, 898 P.2d 864 (1995)). In the absence of the record clearly indicating what indeterminate sentence the court would have imposed had it understood its obligation to do so, we believe remand for de novo resentencing is necessary on count 3.

16

B

Krause argues that, on remand for resentencing, the resentencing hearing should take place before a new judge. "A party may seek reassignment for the first time on appeal, which is usually done where the trial judge 'will exercise discretion on remand regarding the very issue that triggered the appeal and has already been exposed to prohibited information, expressed an opinion as to the merits, or otherwise prejudged the issue.' " State v. Solis-Diaz, 187 Wn.2d 535, 540, 387 P.3d 703 (2017) (quoting State v. McEnroe, 181 Wn.2d 375, 387, 333 P.3d 402 (2014)). "[R]eassignment on appeal is available only in limited circumstances; even where a trial judge has expressed a strong opinion as to the matter appealed, reassignment is generally not available as an appellate remedy if an appellate opinion offers sufficient guidance to effectively limit trial court discretion on remand." Id. "Erroneous rulings generally are properly grounds for appeal, not recusal." Id. "But where review of facts in the record shows the judge's impartiality might be reasonably be questioned, the appellate court should remand the matter to another judge." Id.

Krause argues the sentencing judge would not be impartial because he has already expressed an opinion on the matter and because he was required to recuse. Neither of Krause's contentions support reassignment.

First, Krause does not identify any statements the sentencing judge made that rise to the level of impartiality expressed in the statements in Solis-Diaz. There, the judge expressed frustration and unhappiness at the Court of Appeals for requiring him to address anew whether the defendant should be considered for

an exceptional downward sentence and made remarks that he was committed to the original standard range.  Id.at 541.

Second, Krause waived any argument that the trial judge was required to recuse because "a litigant who proceeds to trial knowing of potential bias by the trial court waives [their] objection and cannot challenge the court's qualifications on appeal."  In re Welfare of Carpenter, 21 Wn. App. 814, 820, 587 P.2d 588 (1978).  As we explained before, "[a] party may not speculate about a court's rulings at trial and then when the court does not rule in their favor, raise the issue of bias later on appeal."  Krause, No. 84599-3-I, slip op. at 49 (citing Carpenter, 21 Wn. App. at 820).  Krause may not now challenge the judge's impartiality on resentencing when he waived it initially by proceeding to trial.

Krause argues the sentencing court should consider RCW 13.40.300— changing the procedure on how charges are filed in juvenile court.  Because we remand for resentencing, we decline to reach Krause's argument.

We remand for resentencing on count 3 and otherwise affirm.

_Birk, J._

WE CONCUR:

_Díaz, J._                           _____, ACJ